WILLIAM J. HOLDEN & another, receivers, *vs.* METROPOLITAN
NATIONAL BANK.

Middlesex.  ˙Jan. 8. — Oct. 25, 1884.  DEVENS & HOLMES, JJ., absent.

The treasurer of a savings bank took certificates of stock belonging to the savings
    bank, had them transferred to a national bank, and new certificates issued to
    such bank, and, on the pledge of the new certificates, borrowed a sum of money
    in the name of the savings bank.  The debt not being paid, the national bank
    sold the shares of stock under a power given by the treasurer of the savings
    bank in its name.  *Held*, that, whether the treasurer of the savings bank had
    authority or not to make the transfers of the stock, the receivers of the sav-
    ings bank could not maintain an action of contract against the national bank
    to recover the proceeds of the shares sold by it.

W. ALLEN, J.  This is an action of contract by the receivers
of the Reading Savings Bank.  The declaration alleges that cer-
tificates of shares of bank stock which belonged to the savings
bank came into the hands of the defendant, and that the defend-
ant sold said shares.

The report shows that the defendant held and sold certifi-
cates of stock standing in its own name.  It never had in its
possession, or in any way meddled with, the certificates that
stood in the name of the savings bank.  It did not accept an
assignment of those certificates, or a transfer of the stock they
represented, and did not surrender the certificates or procure
the issue of new ones upon the transfers.  These things were
all done by Nathan P. Pratt, the treasurer of the Reading Sav-
ings Bank; and after they had all been done, the defendant,
in good faith, advanced money upon the pledge of the new cer-
tificates, and stood in the position of a *bona•fide* purchaser of
them for value.  Pratt assumed to act for and by authority of
the savings bank.  If he had authority, the assignments and
transfers of the stock, and the surrender of the old certificates
and the issuing of the new ones, were valid, and the new certifi-
cates represented stock which belonged to the savings bank as
general owner, and the plaintiffs are entitled to the surplus of
the proceeds of the sale of it above the amount for which it was
pledged.  If Pratt's acts were not authorized, they may be rati-
fied with the same effect as if there had been previous author-
ity; if not authorized or ratified, the assignments and transfers,

and surrender of the old and issue of the new certificates, were all null and void as to the plaintiffs, whose stock remained unassigned and held, in legal contemplation, under the old unsurrendered certificates, and the plaintiffs had no interest in the new certificates or the stock they represented. The plaintiffs cannot both deny and affirm the validity of the transfers of their stock to the defendant. By denying the validity of the transfers, they necessarily disclaim the ownership of stock represented in the certificates issued upon such transfers; by affirming the validity of the transfers, they ratify the pledge of the stock. In the one case, the stock sold would not belong to the savings bank; in the other, the sale would be authorized by the savings bank. In neither case can the plaintiffs recover in this action, which is founded on an unlawful sale of stock belonging to the savings bank. *Pratt* v. *Taunton Copper Co.* 123 Mass. 110. *Machinists' National Bank* v. *Field*, 126 Mass. 345. *Boston & Albany Railroad* v. *Richardson*, 135 Mass. 473.

*New trial ordered.*

*R. D. Smith & D. C. Linscott*, for the defendant.
*S. Bancroft*, for the plaintiffs.