WILLIAM J. HOLDEN & others *vs.* METROPOLITAN NATIONAL BANK.

Middlesex.    January 8, 1890. — February 26, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Receivers of Savings Bank — Repudiation of Treasurer's Illegal Acts — Election.*

The treasurer of a savings bank had shares of stock belonging to it transferred to a national bank, and, on the pledge of new certificates issued to such bank, borrowed a sum of money in the name of the savings bank. The debt not being paid, the national bank sold the shares of stock under a power given in the name of the savings bank by the treasurer. These acts of the treasurer were entirely unauthorized, and were repudiated by the receivers and trustees of the savings bank as soon as known, and were never ratified. *Held,* that the receivers could not maintain an action of contract against the national bank to recover the proceeds of the shares sold by it, or the excess of such proceeds above the loan.

CONTRACT for money had and received. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on agreed facts, in substance as follows.

In 1878, Nathan P. Pratt, the treasurer of the Reading Savings Bank, of which the plaintiffs were the receivers, had certain shares of stock belonging to the savings bank transferred to the defendant. Upon the delivery by him of new certificates for such shares to the defendant, the latter in good faith made a loan of a sum of money in the name of the savings bank, and paid it over to him. The defendant never had in its possession the certificates of stock standing in the name of the savings bank, or had anything to do with them, and only received and accepted the new certificates as and for collateral security for the loan, with a power to sell the same given in the name of the savings bank by the treasurer. Such treasurer had no authority to borrow the money, or to transfer or to pledge the shares of stock or to procure new certificates therefor, and all of his acts in relation thereto were done without the knowledge or consent of the savings bank or of its officers. After the savings

bank became insolvent and was placed in the hands of receivers, the debt to the defendant bank matured and remained unpaid. Whereupon the defendant sold the shares of stock so held by it as collateral security for an amount in excess of the loan, interest, and the expenses of the sale. The savings bank never received any portion of the money borrowed by its treasurer, nor any benefit therefrom. As soon as his acts were known, they were repudiated by the trustees and receivers of the bank, and have never been ratified.

If upon the facts and pleadings the plaintiffs were entitled to recover the whole amount received by the defendant for the shares of stock, or any part thereof, judgment was to be entered accordingly; otherwise, judgment was to be entered for the defendant.

*B. F. Butler*, for the plaintiffs.

*D. C. Linscott*, for the defendant.

HOLMES, J.   This is the same case which was reported in 138 Mass. 48, but it now comes before us upon agreed facts, which, it is argued, present a new question. The plaintiffs seek to recover the proceeds of the sale of certificates of certain bank stock which stood in the name of the defendant as security for loans. The loans were obtained by Pratt, the treasurer of the Reading Savings Bank, without authority, and he at the same time took certificates of bank stock belonging to the savings bank, had the certificates in question issued in place of them, and delivered the new certificates to the defendant. The plaintiffs seek to recover the proceeds, or if not all, then all above the defendant's advances, etc., on the ground that its property was converted by the sale, and, the vendors having received the price, the plaintiffs may waive the tort and sue for the money thus received.

The plaintiffs argue the case as if they stood in the same position as when the unauthorized transfer was made by Pratt, and the choice of all remedies was open to the savings bank. The trouble is that they do not. It is expressly agreed that as soon as Pratt's acts were known, they were repudiated by the trustees and receivers of the bank. This must be taken to mean, effectively repudiated, and the plaintiffs, once having elected, cannot change their mind. *Butler* v. *Hildreth*, 5 Met. 49. *Met-*

*calf* v. *Williams*, 144 Mass. 452, 454.    Besides, it is further agreed that Pratt's acts never have been ratified.

The foundation of the plaintiff's argument is that they have a title to, or interest in, the certificates sold by the defendant. But those certificates stood in the defendant's name, and the plaintiffs by their avoidance of Pratt's transactions are strangers both to the defendant and to the certificates in its hands. The defendant, even with the help of the other corporations, could not get a title by disseisin to the savings bank's stock against the will of the savings bank. *Pratt* v. *Taunton Copper Co.* 123 Mass. 110, 112. Therefore the certificates which the defendant held did not represent the savings bank stock. It was asked, whether, if the defendant after receiving the certificates had refused to make the loan, the plaintiffs could not have compelled it to retransfer them. We are content to assume that they could have done so. But that would have been upon the footing of affirming the transaction, and insisting on their rights under it. The plaintiffs cannot connect themselves with the certificates except through the acts of Pratt, which they have repudiated. The case is governed by the former decision, 138 Mass. 48. It is not as if the plaintiffs were suing for the proceeds of their own certificate, or of a registered debenture belonging to them. See *Monk* v. *Graham*, 8 Mod. 9 ; *Cottam* v. *Eastern Counties Railway*, 1 Johns. & Hem. 243.

If the plaintiffs were bringing a bill against the corporations whose stock the savings bank held, to compel the reissue to them of the certificates, to which they are entitled in case they can get them without an overissue of stock, and if the defendant took its certificates with notice of Pratt's want of authority, and still held them, very likely it would be proper to make the defendant a party, and to compel it to redeliver its certificates in order to prevent an overissue, and thus to insure the plaintiff the specific property rather than damages in a more satisfactory way than by requiring the corporations to attempt to purchase their own stock in the market. *Pratt* v. *Taunton Copper Co.* 123 Mass. 110. *Johnston* v. *Renton*, L. R. 9 Eq. 181. But, in our opinion, that would not be on the ground that the plaintiffs had any title to the defendant's certificates.

*Judgment for the defendant.*