ELIZA A. WALL *vs.* OLD COLONY TRUST COMPANY
& others.

Suffolk.   December 8, 9, 1898. — October 19, 1899.

Present: KNOWLTON, MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Wrongful Conversion by Partner of Asset of Firm — Suit by Copartner against
other Persons for Participation in Conversion — Equity.*

In this bill in equity brought by one member of a firm to recover damages for the
wrongful appropriation of partnership property by another member of the firm,
it was held, upon demurrer by two of the defendants, not members of the firm,
that the allegations of the bill were insufficient to make them answerable in
damages.

BILL IN EQUITY, filed March 15, 1897, against the Old Colony Trust Company, the Boston Cordage Company, Charles H. Pearson, Charles Davis, and Edward M. Fulton, to recover damages caused by an alleged participation by the defendants in a wrongful conversion of certain stock by one Frank T. Wall, the plaintiff's copartner.   The bill was dismissed, for want of service, as against all the defendants except the Old Colony Trust Company and Pearson, each of whom demurred to the bill.   Hearing before *Barker,* J., who reserved the case for the consideration of the full court.   The facts appear in the opinion.

The case was argued at the bar in December, 1898, and afterwards was submitted on briefs to all the justices except *Holmes,* C. J., and *Loring,* J.

*L. L. Scaife,* for the plaintiff.

*L. S. Dabney & J. R. Dunbar,* (*F. Rackemann* with them,) for the Old Colony Trust Company.

*M. Storey,* (*R. Foster* with him,) for Pearson.

HAMMOND, J.   This bill is brought by Eliza A. Wall, in her individual capacity and also as liquidating partner of the late

firm of William Wall's Sons, against five defendants. As to three of them the bill has been dismissed for want of service, and the remaining defendants, the Old Colony Trust Company and Charles H. Pearson, have each demurred to the bill. Among the grounds of demurrer are, first, the want of necessary parties ; and, second, the want of equity. While the first ground suggests some grave difficulties in the way of maintaining the bill, yet we have not found it necessary to express any opinion upon it in view of the conclusion to which we have come upon the second.

The firm consisted of three partners, and the act complained of is the appropriation by the managing partner, Frank T. Wall, of certain assets of the firm for a purpose beyond the scope of the partnership agreement, without the knowledge or consent of the plaintiff. The bill is brought by the plaintiff in her individual capacity, because, by reason of a well-known technical objection, an action at law cannot be brought in the name of the firm ; *Jones* v. *Yates*, 9 B. & C. 532 ; *Homer* v. *Wood*, 11 Cush. 62 ; *Farley* v. *Lovell*, 103 Mass. 387 ; and she proceeds in equity because as an individual partner her interest in any of the assets of the firm, prior to an accounting at least, is simply an equitable interest. The fact that she is a liquidating partner is immaterial, and the bill must stand as a bill by an individual partner to recover damages for the wrongful misappropriation of a part of the partnership assets by one of the other partners.

The defendants by their demurrer insist that the allegations of the bill do not show that the plaintiff is entitled to relief in equity. In the discussion of this question it becomes necessary to examine into the general nature of the bill and the kind of relief sought. Although the bill with the documents annexed thereto and made a part thereof is somewhat voluminous, yet a comparatively brief synopsis will be sufficient for our present purpose. The case thus briefly summarized may be stated as follows.

The firm is a foreign firm, and all the partners reside in New York, the place where the business of the firm was carried on. On or about August 5, 1891, by a written agreement to which the defendant Pearson was a party, The National Cordage Company, a New Jersey corporation, hereinafter called the buyer,

agreed to buy, and The Boston Cordage Company, hereinafter called the seller, agreed to sell certain real and personal estate which had theretofore been used in carrying on the cordage business, the price being fixed at $1,750,000. This sum was to be paid as follows: $1,000,000 by the delivery to the seller of 10,000 shares of the preferred stock of the buyer, and $750,000 in interest-bearing bonds and trust certificates secured by a trust deed and guaranteed by the buyer.

By reason of certain by-laws of the buyer, which are set out in the bill, the agreement provided that the property should be conveyed to the Old Colony Trust Company, one of the defendants. Although the latter company was not a party to this contract, yet this provision was the result of prior negotiations with it, and its assent must be presumed from the allegations of the bill.

Pearson was neither buyer nor seller, but was to enter the service of the buyer under certain arrangements, more fully set out in the contract.

The buyer did not have the 10,000 shares of its preferred stock which it was to deliver to the seller, and undertook to procure the same under an agreement with certain holders of such stock, providing in substance that those who advanced to the buyer any such stock should receive, as soon as its capital stock should be increased, an equal amount of preferred stock, and meanwhile should be paid " equivalent amounts to what they would have received as dividends on such stock had they retained same "; and it was still further provided that the property bought should, subject to the trust deed in favor of the holders of the $750,000 of bonds, be conveyed by a trust deed to one Fulton, to secure the rights of the stockholders under this agreement. On August 5, 1891, the firm of William Wall's Sons owned 4,000 shares of the preferred stock of the buyer corporation, and Frank T. Wall fraudulently assumed and undertook in behalf of said firm to advance the stock to the buyer to enable it to carry out its agreement with the seller, and for that purpose assigned the shares to one Atterbury.

All these various agreements were made for the purpose of carrying out the agreement of purchase from the Boston Cordage Company.

On August 21, 1891, the parties met in Boston.  The 4,000 shares above named which were advanced to the buyer were delivered by the buyer to the seller as a part of the purchase price, the property bought was conveyed by the seller to the Old Colony Trust Company, upon trust to secure the holders of the bonds to the amount of $750,000, and upon the termination of that trust to convey the same to Fulton, who was to hold the same in trust for those who had advanced the stock to the buyer, and upon the termination of that trust to convey the same to the buyer.  Pearson on that day also received from the National Cordage Company aforesaid certain stock in no way connected with the purchase, but to which he was entitled under the agreement of August 5, 1891, between him and the last named company under which he was to enter into its employ.

Frank T. Wall had no authority under the partnership agreement or otherwise thus to dispose of these shares of stock owned as aforesaid by the firm, and this wrongful appropriation was without the consent or knowledge of the plaintiff, nor has she ever ratified the same.  The plaintiff never has personally attended to or actively participated in the conduct of the business of the firm, although she was the owner of most of the capital.  The profits and losses of the business were shared as follows :  The said Frank, five tenths thereof, the plaintiff four tenths, and the said Frank and one Brinckerhoff as trustees under a certain will, one tenth.

The defendants, at and before the said meeting in Boston and before the delivery of the certificates by Atterbury, " had notice, information, and knowledge that said Charles L. Atterbury was not the absolute owner of said 4,000 shares ; that said Charles L. Atterbury, attorney, was not the absolute owner of said 4,000 shares ; that said The National Cordage Company was not the absolute owner of said 4,000 shares ; that said Edward M. Fulton was not the absolute owner of said 4,000 shares ; that the said firm of William Wall's Sons was the owner of said 4,000 shares ; that the assent of all the partners therein was requisite to a valid transfer of said 4,000 shares in part payment for such purchase by, and for the benefit and accommodation of, said The National Cordage Company, and to enable it to carry out its contract under said agreement dated August 5, 1891 ; and

that the acts of said Frank T. Wall in the premises were not within the scope of the ordinary business and transactions of said partnership of William Wall's Sons ; also, that the said Charles L. Atterbury, attorney, was then the holder of said certificates for said 4,000 shares by such a title, if any, that he might not have authority to assign or transfer or deliver them to said The Boston Cordage Company of New Jersey, as he did thereafter at said meeting assign, transfer, and deliver them, as part of the transaction alleged." Neither of the defendants " made, before said assignment, transfer, and delivery, or before said 4,000 shares had been sold, assigned, and transferred to purchasers for value without notice, as aforesaid, due inquiry, or any inquiry, as to whether said Charles L. Atterbury, attorney, was authorized to assign, transfer, and deliver said certificates and shares as aforesaid ; or whether said Frank T. Wall was authorized to assign, transfer, or deliver said certificates in the name of said firm of William Wall's Sons as aforesaid."

The partnership expired by its own limitation March 1, 1893, and was actually and formally dissolved by notice given by the plaintiff May 12, 1893. The business of the firm was the manufacture and sale of cordage and twine, and similar commodities.

The plaintiff alleges " that the said Frank T. Wall, at the time of said dissolution of the firm of William Wall's Sons, had overdrawn his account ; that the books of the firm, kept under his supervision and direction, showed and show that he had overdrawn his account, and that he had no interest remaining in the assets of said firm, but was and is a debtor to said firm ; that no entry has ever been made in the books of said firm showing any disposition of said shares ; that said Frank T. Wall is insolvent ; that as partner in said firm he has not any interest remaining in the firm or in the assets thereof, but is so indebted and liable to said firm and to the plaintiff as a member thereof that if the total value of said 4,000 shares as of on or about August 21, 1891, and interest thereon from said date, were now part of the assets of said firm of William Wall's Sons, none of said value would belong to said Frank T. Wall, but that all of it would belong and be payable to the plaintiff. And the plaintiff claims that the defendants are jointly and severally liable to her, as an individual member of said firm, for the entire

value of said 4,000 shares of preferred stock as of on or about August 21, 1891, and interest from that time."

The plaintiff prays, " 1. That it may be decreed that the defendants are jointly and severally liable to plaintiff for the damages caused to plaintiff by the said acts of, and participated in by, the said defendants, and that the amount of such damages may be ascertained and declared. 2. That the defendants may be jointly and severally ordered and decreed to pay to plaintiff the amount thereof so ascertained, declared, and decreed. 3. And for such other and further relief as may be proper and required in the premises."

It will be observed that the bill does not allege that the defendants knew that Frank T. Wall was acting without actual authority. They knew that he was using the firm property for a purpose not authorized by the articles of copartnership, and that such use was in law a fraud upon the other partners, unless he was acting with their consent; but they had no knowledge whether such consent had been given. In so far as they participated in this transaction they had notice that Frank T. Wall was using property for a purpose not legal without the consent of all the owners, and they made no inquiry as to whether he had such consent. If they were dealing with him in any way, they knew that he was the managing partner in a large firm engaged in the manufacture and sale of cordage ; that this firm was a large owner of the preferred stock of the National Cordage Company ; that this company was purchasing the plant and business of a similar company ; and that this stock was advanced to the buyer under an agreement which may have seemed favorable in its terms to those by whom it was advanced ; and as business men the defendants may have felt that Frank T. Wall was acting for the best interests of his firm and with the consent of all his partners.

The defendants had notice that Frank T. Wall's title to the stock was such that he might not have authority to advance the shares to aid the purchase, but the bill does not allege that they supposed or believed that he was acting without the consent of his partners. They had notice simply that if there was no such consent then the transaction, so far as it affected the interest of his partners, was voidable.

The bill does not seek to enforce a trust upon the shares of stock, or upon any of the property purchased thereby, or upon any proceeds thereof, or to enjoin the defendants or either of them from conveying such property or proceeds pending litigation elsewhere or in another form. It proceeds upon the theory that the plaintiff's interest in the stock was lost by the conveyance in August, 1891, and the plaintiff seeks for a decree making the defendants answerable, and compelling them to pay her as damages the amount of her loss. In substance the suit is in the nature of tort for conversion, and is brought in equity for reasons hereinbefore stated. Such in general terms is the nature of the bill and of the relief sought.

In substance the bill alleges a wrongful conversion of the stock by Frank T. Wall, and a participation by the defendants in that act.

Where fraud is alleged, the acts upon which the charge is made should be set forth with particularity and not in general terms, and general statements of conclusions of law drawn therefrom are not admitted by the demurrer. Story, Eq. Pl. §§ 251, 252, 452.

It becomes necessary to examine into the allegations of the bill as to the precise act of conversion and the connection of the defendants with it, and it is constantly to be borne in mind that the thing alleged to have been converted is the stock and not the proceeds of it.

On August 5, 1891, this stock was owned by William Wall's Sons as a partnership asset, and stood in their name on the books of the corporation.

On or before August 20 of the same year Frank T. Wall wrongfully assumed and undertook in the name and in the behalf of the firm to " advance " the stock to the National Cordage Company to enable it to carry out its contract of August 5, and in pursuance of that purpose and for that object, by written assignments in the firm name made in due form upon the back of the certificates, he assigned these certificates to Atterbury and delivered them to him.

Atterbury was " then and there acting as the attorney in fact and agent for " the National Cordage Company. As to Atterbury's authority, the bill further alleges: " And plaintiff is

informed that said Atterbury was then and there also assuming to act, by request of said Frank T. Wall, as the attorney in fact and agent of said firm of William Wall's Sons; and that said Atterbury, acting and assuming to act as aforesaid, received said forty certificates and surrendered the same to said The National Cordage Company, and received therefrom forty new certificates of one hundred shares each of said preferred stock issued in the name of Charles L. Atterbury, attorney, and which were delivered to him as attorney in fact and agent, acting and assuming to act as aforesaid, to be used for the objects and purposes aforesaid."

The plaintiff further says that she has not sufficient knowledge " to aver with greater certainty as to what other party or parties (if any) were, or were intended to be, represented by " Atterbury ; but this transfer was without the express or implied authority of the firm, and Atterbury had in fact no authority to act for the firm in any way.

By these transactions these certificates were wrongfully transferred to Atterbury, the attorney in fact of the National Cordage Company. The new certificates were held by him with no authority to hold them for or in any way to act for the firm of William Wall's Sons. The stock had thus been " advanced " to the cordage company in fulfilment of the agreement mentioned in the indenture of August 15, between Fulton and others. By the delivery to Atterbury the stock had gone from the firm, and no citations are needed to show that the conversion was complete, and that had Frank T. Wall been simply an agent of the firm and not a partner, so that the technical reasons for not allowing the firm to sue at law for trover had not been applicable, both he and Atterbury would have been liable in trover even without demand.

This transfer the plaintiff repudiates. She does not seek to enforce a trust upon the stock or upon the proceeds thereof in the hands of any parties having notice. She is content to release her hold upon the stock and its proceeds, and to seek damages for this conversion.

And now what connection did the defendants or either of them have with this act of conversion? They were not present and directly did nothing in the matter, and there is nothing in the bill to show that either one of them knew or had any inter-

est in knowing by whom the stock was to be advanced to enable the cordage company to carry out the contract of sale.

Nor is it alleged that either Wall or Atterbury were acting in collusion or in company with or as the agent of either defendant. It is true, the bill alleges, that on August 21, 1891, at the time the contract of sale was completed and the various necessary conveyances were made, the defendants knew that the certificates of stock were the property of William Wall's Sons, and that Atterbury held them by such a title, if any, that he might not have authority to assign them. This charges the defendants with knowledge of the conversion, so that the plaintiff might have enforced a trust upon the stock or its proceeds which came to their hands.

But it does not make them participants in the act of conversion which had previously taken place, nor does it make them liable in damages for that act. *Shaw* v. *Spencer*, 100 Mass. 382. *Holden* v. *Metropolitan National Bank*, 151 Mass. 112. Although all the acts and agreements previous to August 21, 1891, and the transactions of that day are said to be one entire transaction, yet, since they are set out in detail, we understand that statement to be only an allegation of the legal effect of the facts set out and alleged, and as such we do not think it is true within the rule that in one entire transaction the act of each is the act of all, and in any other respect the allegation is immaterial. There is nothing to show that the agreement to advance the stock had any relation to the contract of sale with which the defendants were concerned.

The allegation that by " their said acts and otherwise " the defendants " committed a fraud " upon the plaintiff and " converted and assisted and participated in converting " this stock, is not sustained so far as it relates to the " said acts " theretofore set out in the bill, and so far as it concerns acts not set out it is too vague and indefinite.

*Demurrer sustained.*