EDWARD A. HUNTING & another, trustees, *vs.* GLADYS SAFFORD.

Suffolk.   January 23, 1903. — March 16, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Trust*, Duties of trustee. *Payment.*

The trustees under a will held a certain amount of accumulated income belonging to G. a minor. H., one of the trustees, was the guardian of M., another minor. The person who was guardian of G. had formerly been guardian of M. and owed a large sum of money to M. which H. had been unable to collect. The trustees made an arrangement with the guardian of G. that he should give them a receipt for the amount due G. for accumulated income in exchange for a receipt for the same amount given by H. as guardian of M. The receipts were exchanged. No money passed on either side, but H. charged himself with the amount as received for M. *Held*, that in the accounts of the trustees the amount exchanged by receipts must be disallowed as a payment to G.; that it was a misappropriation of the income of G. to release it without receiving a payment in money or anything valuable to her, and to use it as a means of obtaining a release of the personal liability of M.'s former guardian.

APPEAL from a decree of the Probate Court for the County of Suffolk allowing the account of the trustees under the will of Mary J. Safford.

The case was heard by *Hammond*, J., who reversed the decree of the Probate Court as to an item of $4,000, deciding that the transaction described in the opinion was not such a payment as would discharge the trustees from liability to Gladys Safford. The trustees appealed.

*A. Hemenway*, for the trustees.

*C. S. McCoy*, of Chicago, (*J. F. Warren* with him,) for the defendant.

KNOWLTON, C. J.  This is an appeal from a decree of the Probate Court allowing the account of the trustees under the will of Mary J. Safford, deceased.  Only a single question is before us, namely, whether the item claiming credit for $4,000 paid to " Soledad B. Safford Parken and Leandro T. Safford, guardians, Gladys Safford for amount paid them on account of income collected to January 1, 1898," shall be allowed.  It is the duty of the trustees to pay income of the property in their hands to Margarita Safford and Gladys Safford, minor nieces of the testatrix, who resided in Florida.  On the death of their father, his widow, Soledad B. Safford, who was the mother of Gladys and the stepmother of Margarita, with her adopted son Leandro T. Safford, were appointed guardians of these minors on December 22, 1891.  In April, 1893, the guardians resigned their guardianship of Margarita, and Edward A. Hunting, one of the trustees who file this account, was appointed her guardian, while they retained their guardianship of Gladys Safford.  Previously to their resignation they had collected $10,000 on a policy of insurance upon the life of A. P. K. Safford, which was payable to Margarita Safford and belonged to her estate.  They rendered no account, but held this money and paid over nothing to the new guardian.  For five years and more Hunting endeavored in every reasonable way to collect this sum for his ward, without success.  During this period, under the advice of counsel, the trustees withheld from Gladys Safford her share of the income, hoping thereby more easily to collect from her guardians the money or a part of the money which these persons owed to Hunting as the guardian of Margarita Safford on account of their collection from the life insurance company.  In March, 1898, Hunting met the guardians of Gladys in Florida, and it was arranged between them that the guardians of Gladys should give the trustees of Mary J. Safford's estate a receipt for $4,000 income, and that Hunting should give the former guardians of Margarita a receipt for $4,000 on account of what they, as former guardians, owed Margarita.  This was done, and the parties treated the transaction at the time as a payment of $4,000 income from the trustees to Gladys and a payment of $4,000 of insurance money from the former guardians of Margarita to Margarita.  No money was actually paid on either side.  Hunt-

ing, as guardian of Margarita, accounted for this as money received for her benefit, but Gladys has received nothing from her guardians on account of the transaction. She contends that this was not a good payment to her, and that the trustees are still accountable for her share of the income.

It is to be noticed that Gladys Safford was not interested in the payment to Margarita, and Margarita was not interested in the payment to Gladys. The guardians of Gladys happened to be liable in a different relation to Margarita, and one of the trustees who owed Gladys happened to be the person whose duty it was in an independent relation to collect the money due Margarita from her former guardians.

The trustees, and Hunting as one of them, were under an obligation to Gladys to act in good faith, and with a reasonable regard for her interest, in dealing with her or her guardians. At the time of this transaction they had good reason to know that a claim against the guardians of Gladys was not equivalent to cash, for Hunting had been trying unsuccessfully for five years to collect from them the $10,000 which, as former guardians of Margarita, it was their duty to pay to him. In making the payment to them for Gladys, Hunting knew that nothing valuable to her passed into their hands. The so-called payment was made by setting off and balancing against it their personal obligation to Margarita for an equal amount. Viewing the transaction in reference to that part of it which was the direct act of Hunting as one of the trustees, it was a payment which was inherently of no benefit to Gladys, for it did not transfer money or anything that was of value to her, but only a release of the personal obligation of her guardians to her sister in which she had no interest. Viewing it in reference to the conduct of her guardians and to Hunting's participation in their conduct, it was a misappropriation of her income to release it without a payment in money or in anything valuable to her, and to use it as a means of obtaining a release of their personal liability to Margarita. Hunting took part in this misappropriation as a party to the arrangement by which it was accomplished. This transaction, considered in reference to the strict rules of law governing the duties of guardians to their wards and of trustees to their *cestuis que trust*, was fraudulent, and the trustees can-

not avail themselves of it as a payment, to one who was under the disability of infancy and who received no benefit from it. General principles applicable to such cases have been stated in many decisions. *Dunten* v. *Richards,* Quincy, 67. *Atkinson* v. *Atkinson,* 8 Allen, 15. *Loring* v. *Salisbury Mills,* 125 Mass. 138. *O'Herron* v. *Gray,* 168 Mass. 573. *Hayes* v. *Massachusetts Life Ins. Co.* 125 Ill. 626. *Rogers* v. *Fort,* 19 Ga. 94. *Wormley* v. *Wormley,* 8 Wheat. 421. *Pairo* v. *Vickery,* 37 Md. 467. *Snyder* v. *McComb,* 39 Fed. Rep. 292. *Heath* v. *Waters,* 40 Mich. 457. *Braswell* v. *Downs,* 11 Fla. 62. *Breit* v. *Yeaton,* 101 Ill. 242.

The principle is the same as that which is established in reference to the payment of a debt to a partnership by an arrangement with one of the partners for a release of it by him in the partnership name, in consideration of a release by the debtor of a personal debt of corresponding amount, due from the partner individually. Such an attempted payment is deemed fraudulent as against the partner who does not consent to it, because nothing is received which is valuable to the firm. All that the firm gets is a claim for the amount against one of its members, which may or may not be valuable as an asset for the benefit of the other members. *Williams* v. *Brimhall,* 13 Gray, 462. *Brickett* v. *Downs,* 163 Mass. 70.

We are of opinion that the decision of the single justice, disallowing this item in the account, was correct.

*Decree of single justice affirmed.*