## SARA SHAPIRA vs. JACOB BUDISH & others.

Suffolk. February 2, 1931. — March 12, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Partnership. Equity Pleading and Practice,* Parties; Master: findings. *Payment. Assignment.*

The bill, in a suit in equity for an accounting, contained allegations that the plaintiff agreed to supervise the erection of a new building and to draw only a certain sum as expenses during the erection; that the defendants agreed to finance the venture and to pay the plaintiff twenty-five per cent of the net profits thereof after sale of the new building; and that the defendants had refused to account for such profits. An assignee of the plaintiff's claim against the defendants subsequently was permitted to prosecute the suit. A master found that the defendants' agreement was with the assignor and another man as partners; that the share of the net profits to be paid to them as such for their supervision was fifty per cent; that the partners performed their part of the agreement; and that, after sale of the building erected, there was a profit for which the defendants had not accounted. A final decree was entered ordering the defendants to pay the assignee twenty-five per cent of such profit. Upon appeal, it was *held,* that

(1) The contract of the defendants being with a partnership of which the plaintiff's assignor was a partner, he alone could not have maintained the suit to enforce a claim which was an asset of the partnership;

(2) The assignee in the circumstances stood in no better position than the assignor;

(3) The decree must be reversed, and a decree entered dismissing the bill.

The master in the suit in equity above described found that there was no agreement of partnership in writing between the plaintiff's assignor and his partner; and that they had engaged in only one previous transaction as partners. The master did not purport to report all the subsidiary facts upon which he based his conclusion that a partnership existed between the two men. The evidence was not reported. *Held,* that such conclusion was not inconsistent with the facts reported and must stand: the number of previous transactions between the two was merely a circumstance and not conclusive.

The defendants in the suit in equity above described set up a defence of payment of fifty per cent of the profits of the venture. The master found that the partner of the plaintiff's assignor was indebted to the defendants in an unstated sum with reference to another transaction;

that, after the sale of the building and demand by the assignor upon the defendants, they, without the knowledge or authority of the assignor, set up on their books an entry crediting his partner as an individual with a sum which they claimed to be fifty per cent of the profits of the venture; and that no money then was due the partner from the defendants except such interest as he had in the profits of the venture. *Held,* that the defendants had not maintained the defence of payment.

BILL IN EQUITY for an accounting, filed in the Superior Court on March 10, 1921.

The suit originally was brought by William Barrish. Subsequently Sara Shapira was permitted to prosecute the suit as assignee of the plaintiff's claim by mesne assignments. The trustee in bankruptcy of a partnership composed of one Jacob Berson and William Barrish was permitted to intervene as a plaintiff. The suit was referred to a master, who made a finding as follows:

"I find that some time in the early part of October, 1919, the said Louis Budish entered into a copartnership with one Levy and at that time took title to a parcel of land for which there was due to the said defendants from Louis Budish an unstated sum of money. I find that in October 1920 the defendants gave credit on their books to the said Louis Budish for the sum of $1,501.79 (which in addition to the $205 appearing . . . as item dated September 19, 1920, . . .) amounted in all to $1,706.79, which was claimed at the trial by the defendants to be fifty per cent of the total profits made on the . . . [building] venture. I find that the entry of $1,706.79 was a book entry of the defendants; that no money at that time was due to him from the defendants, excepting such interest as Louis Budish had in the profits arising from the construction and sale of the three three-family houses, and that same was merely the setting up of a credit entry; that the original plaintiff William Barrish had no knowledge of said entry nor did he at any time authorize the defendants to credit any such payment on their books."

Other material findings are stated in the opinion. A motion by the defendants to recommit the report was denied by *Weed,* J. By his order there was entered an inter-

locutory decree confirming the report. By order of *Bishop,*
J., a final decree' was entered dismissing the intervening
petition by the trustee in bankruptcy and ordering the
defendants to pay the plaintiff $1,020.45, with interest and
costs. The defendants appealed from the order denying
their motion to recommit and from the interlocutory and
final decrees.

*A. M. Hillman,* for the defendants.

*M. M. Horblit,* (*B. Goldman* with him,) for the plaintiff.

SANDERSON, J. In this suit begun in 1921 William
Barrish, the original plaintiff, sought among other things
to recover a percentage of the profits received by the de-
fendants from the construction, rental and sale of three
new buildings. On November 8, 1929, Sara Shapira was
permitted to appear and prosecute the action as a party
plaintiff. The master found that on or about April 8,
1924, the original plaintiff assigned all his right, title and
interest in his claim against the defendants to Isidor Wint-
man, by an assignment which was lost. He also found that
on October 7, 1929, Wintman by written assignment trans-
ferred all his right, title and interest in the suit to the
present plaintiff. Barrish was adjudicated a bankrupt on
December 9, 1926. In 1929 his trustee in bankruptcy
filed a petition to intervene. In the final decree this peti-
tion was dismissed, and the trustee did not appeal there-
from. .It is alleged in the bill that on or about March 1,
1919, the defendants in consideration of the agreement of
William Barrish to supervise the erection of three new build-
ings, and in consideration of his agreement to draw only
$35 a week as expenses during the period of such erection,
agreed to advance all sums necessary for the purchase of
a designated lot of land and for the erection of three new
buildings thereon, and further agreed that, upon the com-
pletion of these buildings and upon the sale of the property,
they would pay him twenty-five per cent of the net profits
of the venture, the fund from rental and sale of the buildings
to be treated as a partnership fund, of which Barrish was
entitled to a one-quarter interest after cost of land and of
labor and materials had first been deducted therefrom.

The bill further alleged that Barrish performed his part of the contract; that the new buildings were completed and ready for occupancy on or about September 1, 1919; that after being let they were sold for a sum in excess of the amounts paid for land, labor and material, but that the defendants have refused to account for the profits of the sale; that the account between Barrish and the defendants is voluminous and complicated and cannot be as adequately and conveniently taken in an action at law as in a suit in equity. The relief prayed for was an accounting by the defendants for all sums paid out and received by them in the transaction; for an order that the defendants pay Barrish twenty-five per cent of the net profits of the venture; for an injunction and for general relief.

The defendants in their answer deny entering into an agreement to pay Barrish twenty-five per cent of the profits arising from the sale of the houses, but say that, if a contract was made for the payment to Barrish and Louis Budish for the supervision of the construction of the three new buildings, it was an agreement to pay them as partners fifty per cent of the net profits on the buildings to be erected; that Barrish abandoned the work before the buildings were completed; that Louis Budish, his copartner, completed the work provided for in the original undertaking by the partnership, and thereafter managed the real estate and supervised the renting and sale thereof; and that the defendants paid him fifty per cent of the net profits arising from the sale of the buildings.

The master found that the defendants entered into an oral agreement with Barrish and Louis Budish as partners by the terms of which the defendants were to advance the money necessary for the purchase of the land in Worcester and for the labor and materials used in the construction of the buildings to be erected thereon, to charge at the rate of eight per cent for the moneys advanced by them, to pay Barrish and his partner a sum equal to fifty per cent of all profits made on the venture; that the partners agreed to supervise the construction of the buildings and to work as carpenters in their erection, and as partners to divide their

share of the profits equally. There was no written agreement of partnership between them and they engaged in but one prior transaction as partners. The master found that Barrish and Louis Budish began the construction of the buildings on or about May 15, 1919, devoting substantially all of their time and effort to the supervision of their construction; that Barrish did his full share in the supervision and work necessary for the construction of the buildings, and left Worcester late in September, 1919, when the buildings, except in minor details, were fully completed and ready for occupancy; that part of the premises was occupied by tenants at the time and that there was no abandonment by him of his contract; and the master stated that he was unable to find that there was a dissolution of the copartnership at that time. Their salary was paid weekly by one check until July 12, 1919, and thereafter at the request of Barrish separate checks were issued to them. The master found that the defendants lived up to the terms of their agreement with the partnership until the final construction of the buildings. The last of the three houses was sold August 31, 1920. A schedule of the advances by the defendants was made a part of the master's report, showing the amount of the profit of the venture, including interest to August 31, 1920. Barrish made demand upon the defendants for an accounting and for his share of the profits on February 4, 1920. Before August 31, 1920, counsel had been employed in reference to the present litigation.

The defendants appealed from the denial of their motion to recommit the report and from an interlocutory decree overruling their exceptions to and confirming the report. We have examined the questions raised by these appeals in so far as they have been argued and no error of law is found. The defence that the contract was made with a partnership went to the merits of the case and was properly raised in the answer. *Cushing* v. *Marston,* 12 Cush. 431. *Schwoerer* v. *Boylston Market Association,* 99 Mass. 285, 295. *Fay* v. *Duggan,* 135 Mass. 242, 244. By the final decree, from which the defendants appealed, they were ordered to pay Barrish a stated sum which was equal to one quarter

part of the profits of the undertaking as found by the master, with interest and costs.

The finding that Barrish and Louis Budish entered into the contract and did their work as partners is controlling on that issue. The evidence is not reported. The subsidiary facts reported are not inconsistent with the conclusion that they were partners. The master does not purport to report all the facts upon which this conclusion is based. *Gunnison* v. *Langley*, 3 Allen, 337. *Adamson* v. *Guild*, 177 Mass. 331. *McMurtrie* v. *Guiler*, 183 Mass. 451, 453. *Wheelock* v. *Zevitas*, 229 Mass. 167. See now St. 1922, c. 486, § 6. The number of transactions in which two parties engage is only one circumstance and not in and of itself decisive of the question whether a partnership exists.

The finding upon which the defendants must rely to establish their defence of payment does not state the amount of the indebtedness of Louis Budish to the defendants in October, 1920, when they made the credit entry on their books. The defendants were not then indebted to him except in so far as he had an interest in the profits of the building enterprise. Furthermore the credit on the books apparently was given to him as an individual, not to the firm of which he was a member. There is no finding that Louis Budish was endeavoring to defraud his partner, nor does it clearly appear that he authorized or knew of the entries made by the defendants in their books. But, whether the entry was made with his knowledge or not, the finding to the effect that the transaction was merely the setting up of a credit book entry falls short of establishing the defence that the indebtedness to Barrish and his partner has been paid. We need not consider what the effect of the transaction would have been if Louis Budish had settled his personal liability to the defendants by offsetting it against the indebtedness of his partnership to them, or had received payment of the amount due the partnership. See *Hewes* v. *Bayley*, 20 Pick. 96, 98–99; *Williams* v. *Brimhall*, 13 Gray, 462; *Farley* v. *Lovell*, 103 Mass. 387; *Brickett* v. *Downs*, 163 Mass. 70; *Grover* v. *Smith*, 165 Mass. 132; *Hunting* v. *Safford*, 183 Mass. 157, 160.

As a partner Barrish had no right to a specific partnership asset, but merely the right to share in the profits after the discharge of all partnership obligations. *Pratt* v. *McGuinness,* 173 Mass. 170, 172. *Gay* v. *Ray,* 195 Mass. 8, 15. *Kilduff* v. *Boston Elevated Railway,* 247 Mass. 453, 454. Even after a partnership has been dissolved, neither partner may maintain a separate action on a partnership contract. *Page* v. *Wolcott,* 15 Gray, 536. *Fish* v. *Gates,* 133 Mass. 441. *Holton* v. *American Pastry Products Corp.* 274 Mass. 268. The nature of the property rights of a partner remains the same whether the proceeding in which they arise is in equity or at law. *Tobey* v. *McFarlin,* 115 Mass. 98. *Pratt* v. *McGuinness,* 173 Mass. 170. *Steele* v. *Estabrook,* 232 Mass. 432, 439–440. See *Wall* v. *Old Colony Trust Co.* 174 Mass. 340, 341. With certain exceptions not here material, all partners must be parties to a suit involving partnership rights. *Fowle* v. *Torrey,* 131 Mass. 289.

In the matter of bringing or maintaining suit, an assignee of a partner's interest in a partnership could stand in no better position than the partner himself. *Wonson* v. *Pew,* 148 Mass. 299. *Pratt* v. *McGuinness, supra.* In this connection it is to be noticed that the assignment from Barrish purported to transfer not his interest in the partnership but only his claim against the defendants, and the assignment to Shapira carried only the assignor's interest in the suit.

The cause of action stated in the bill is not the same as that disclosed by the master's findings. The bill alleges a contract between the defendants and Barrish, whereas the master's findings show that the contract was with a partnership of which he was a member. This partnership, even if not in existence for the purpose of doing business, existed for the purpose of collecting and administering the firm assets. *Shelley* v. *Smith,* 271 Mass. 106, 118. See now St. 1922, c. 486, § 30. The indebtedness of the defendants was a partnership asset and not due Barrish personally. No reason has been shown to justify Barrish in omitting to join his partner in the suit, and he must be

deemed to have chosen to rest his case on a personal claim when he knew that the liability was to a partnership of which he was a member. The bill was not brought for a settlement of the partnership affairs between Barrish and Louis Budish. The existence of such a partnership is not referred to in any of its allegations.

In *Pratt* v. *McGuinness*, 173 Mass. 170, 172, the court stated that it was questionable on the authorities whether upon a conveyance of an interest in only a part of the partnership property the assignee could maintain a bill for a settlement of the partnership affairs and for an accounting. But neither this question nor the question whether the assignee of Barrish could join with his partner to enforce a partnership claim against the defendants need be decided, for the present plaintiff Shapira must depend upon such rights as she derived from the assignments, and upon the facts found she has failed to prove that she is entitled to recover in this suit.

The entry must be, interlocutory order and decree affirmed; final decree reversed; decree to be entered dismissing the bill with costs.

*Ordered accordingly.*