Allison L. **RANDLE**, Ara Eresian, Jr. and Hellenic Investors, a partnership, Plaintiffs,

v.

**SPECTRAN, et al., Defendants.**

Civ. A. No. 86–2970–K.

United States District Court, D. Massachusetts.

Sept. 30, 1988.

Glen DeValerio, Deborah R. Gross, Berman, DeValerio & Pease, Boston, Mass., for plaintiffs.

James L. Ackerman, Day, Berry & Howard, Boston, Mass., Katherine E. Perrelli, for Advest & Allen and Co., Inc.

Richard J. McCarthy, Gaston Snow and Ely Bartlett, Mohd A. Aslami, Gary S. Matsko, Davis, Malm & D'Agostine, Boston, Mass., for other defendants.

KEETON, District Judge.

Plaintiffs in this action allege violations of the federal securities laws and Massachusetts state laws in the dissemination of information concerning SpecTran Corporation, a fiber optics manufacturer in Worcester. Plaintiffs, purchasers of SpecTran stock, charge that the officers of SpecTran failed to disclose material facts and made misleading statements in SpecTran's October 15 Registration Statement and Prospectus, its November 14, 1985 Third Quarter Report, its annual reports for 1985 and its press releases in early 1986. Plaintiffs allege that SpecTran omitted to disclose material information until its May 20, 1986 quarterly report.

On December 5, 1986, Plaintiff moved to certify a class of purchasers of Spectran stock, other than defendants, during the period from October 15, 1985 to May 20, 1986 with plaintiffs Eresian, Randle and the partnership of Hellenic Investors as class representatives. On December 30, 1987 plaintiffs moved to amend the complaint to add Charles P. Kiritsy as a plaintiff and class representative and to request the withdrawal of Hellenic Investors, now a defunct partnership, as class representative. On February 6, 1988 defendants moved to dismiss or in the alternative for summary judgment on all claims of Kiritsy and on the state law claims of Hellenic Investors.

## I. FACTUAL BACKGROUND

SpecTran is a corporation that develops, manufactures and markets flexible glass fibers for use in communications by means of light waves. On October 15, 1985, SpecTran filed with the SEC and made effective a Registration Statement and Prospectus for the offer and sale of 725,000 shares of common stock. The individual defendants were, at the time of the offering, officers and/or directors of SpecTran and were signatories to the Registration Statement. The Registration Statement reported that SpecTran was experiencing a successful

year in 1985. On November 14, 1985, Spec-Tran filed its Third Quarter Report with the SEC, which reported continued dramatic improvements in SpecTran's financial results. On or before April 3, 1986, Spec-Tran filed its Form 10K Annual Report with the SEC for the year ended December 31, 1985 which reported the same growth trends as those reported in the Prospectus. This report, however, also announced an anticipated first quarter loss and a substantially lower backlog of orders compared to the year before. At or about the same time, SpecTran issued its 1985 Annual Report to Shareholders which described dramatic success in expanding manufacturing capacities. In a press release dated April 9, 1986, Spectran announced an actual first quarter loss. On May 20, 1986, in its First Quarter Report, SpecTran announced that sales for the first quarter dropped by 92%. The price of SpecTran common stock fell to as low as $6 per share and sold for approximately $3 at the time this action was filed.

Eresian purchased 2000 SpecTran shares on March 4, 1986. He purchased an additional 4,000 shares on April 8, 1986 and 1,000 shares on April 16, 1986. Randle purchased 300 SpecTran shares on April 9, 1986, and 2,000 shares on May 12, 1986. Eresian and Randle testified at deposition that they bought SpecTran stock because the price was declining and they believed the decline would be temporary.

Hellenic Investors, an investment club organized as a partnership, purchased 100 shares of Spectran stock on January 27, 1986. Charles Kiritsy was an organizer and member of Hellenic Investors. In March 1987, Hellenic disbanded after selling all the shares of stock it owned, including its SpecTran stock.

## II. DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

■ Defendants have moved to dismiss or for summary judgment on all claims brought by Charles Kiritsy and the state law claims brought by Hellenic Investors. Defendants argue that the state law claims of Hellenic Investors should be dismissed because Hellenic Investors, as a partnership, cannot sue in its own name. Fed.R. Civ.P. 17(b) provides that the capacity to sue or be sued

> shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States....

Thus, although Hellenic may assert claims under the federal securities laws in its own name, its right to assert claims under Massachusetts state law is governed by Massachusetts rules on capacity to sue. Massachusetts law does not permit a partnership to sue in its own name. Suit must be brought in the name of all of the partners in their individual capacities. *See Feldberg v. O'Connell*, 338 F.Supp. 744 (D.Mass.1972); *Shapira v. Budish*, 275 Mass. 120, 121, 175 N.E. 159 (1931). Even after the partnership has been dissolved, it continues for the purpose of pursuing any claims belonging to the partnership. Partnership claims, therefore, must still be brought in the name of all of the partners. *See id.* at 126, 175 N.E. 159 ("Even after a partnership has been dissolved, neither partner may maintain a separate action on a partnership contract.") Hellenic Investors' state law claims therefore must be dismissed.

■ Plaintiff Charles Kiritsy may be an adequate representative for the class, or some portion of the proposed class, but only if he represents the interests of the partnership. Mr. Kiritsy alleges that he is suing on his own behalf for his *pro rata* share of the partnership claim. Kiritsy is not entitled to sue on his own behalf. The claims of a partnership belong to the partnership, even after dissolution of the partnership. *See Shapira v. Budish*, 275 Mass. 120, 121, 175 N.E. 159 (1931). The purchaser of the stock was the partnership of Hellenic Investors. Although Mr. Kiritsy has an interest in that purchase because

of the dissolution of assets upon liquidation of the partnership, the claim for fraud and misrepresentation belongs to the partnership, which remains in existence for the purpose of pursuing or defending against any claims. *See* 68 *C.J.S.* Partnership 351 (1950) (noting that the general view is that the partnership continues for limited purposes after dissolution, including the collection of claims due the firm, citing *Shapira, supra.*)

■ Mr. Kiritsy may, however, represent his partners in bringing this claim as the named plaintiff in a class action. Plaintiffs have not shown, however, that Mr. Kiritsy intends to pursue the partnership claim. Decision on the motion to dismiss the claims of Kiritsy is therefore deferred pending a conference on this matter.

### III. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs have moved to certify a class of all persons, other than defendants, who purchased Spectran stock from October 15, 1985 to May 20, 1986 and were damaged thereby. Rule 23(a) allows class certification only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties are typical of the claims or defenses of the class.

Fed.R.Civ.P. 23(a). Rule 23(b)(3) further requires the court to find that common questions of law or fact predominate over individual questions, and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### NUMEROSITY & COMMONALITY

Defendants do not dispute that plaintiffs satisfy the numerosity requirement for certification. Nor do they present any argument that plaintiffs have not shown common questions of law or fact. I conclude that plaintiffs have satisfied these two requirements. Plaintiffs allege that Spec-

Tran has more than 4.5 million shares of common stock outstanding, and that thousands of shares were traded during the class period. *Cf. Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir.1981) (purported class presumed sufficiently numerous in class actions involving nationally traded securities). Plaintiffs present common questions in their allegations of misstatements and omission in various Spectran public financial documents. *Cf. Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981) (finding common questions as to the existence, materiality, and character of alleged misrepresentations and omissions in Section 10(b) action.)

### TYPICALITY

Defendants argue that plaintiffs Eresian and Randle fail to meet the typicality requirement of Rule 23(a)(3) on several grounds. First, they allege that their claims of reliance are significantly different from those of most class members due to their investment strategy. Second, plaintiffs argue that Randle's and Eresian's dates of purchase fall after a significant Spectran disclosure. Third, plaintiffs allege that Randle is atypical because she relied on the advice of Eresian. Finally, plaintiffs argue that Eresian is atypical because he is a sophisticated investor.

■ With respect to the issue of reliance, any possible differences in the nature of Eresian's and Randle's claims of reliance from those of the class are not substantial enough to defeat class certification. Defendants contend that Randle and Eresian are atypical because they are not entitled to rely on the fraud on the market theory in order to establish reliance on Spectran's allegedly false or misleading statements or omissions. Randle and Eresian followed an investment strategy of purchasing Spectran stock when they knew the price was falling, on the theory that the market was mistakenly devaluing SpecTran stock. Such a strategy, defendants argue, rebuts the presumption of reliance upon the integrity of the market recognized by the Supreme Court in *Basic v. Levinson,*

485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), and thereby renders Randle and Eresian inadequate representatives, since they will have to prove actual reliance, unlike much of the class they represent.

An investment strategy, however, is "of little importance to ... suitability as a class representative." *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 308 (D.Mass. 1987) (quoting *Kolin v. American Plan Corp.*, 1986–87 Fed.Sec.L.Rptr. (CCH) ¶ 92,728 at 93,543 (E.D.N.Y.1986)). *See also Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D.Mass.1985) (holding that the issue of reliance on an investment strategy does not bar certification). In order to meet the typicality requirement of Rule 23(a)(3) "plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members." *Priest v. Zayre, supra,* (citation omitted). "The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." *Id.* Even if this court were to accept defendants' argument that plaintiffs' particular investment strategy did not indicate reliance on the integrity of the market, a proposition this court concludes to be doubtful, *see Basic v. Levinson, supra* (noting that "it is hard to imagine that there is ever a buyer or seller who does not rely on the market integrity. Who would knowingly roll the dice in a crooked game?" (citation omitted)), plaintiffs would still have to establish all the elements necessary to present the claims of the absent plaintiffs and therefore are sufficiently typical to adequately represent the class.

■ Defendants' contention that Eresian and Randle are not typical because of the late date of their purchases similarly fails. Defendants contend that Randle and Eresian are also atypical of part of the class they seek to represent because they made a substantial portion of their purchases after SpecTran's March 31, 1986 projection of and April 9, 1986 announcement of an actual first quarter loss. Possi-ble differences in the nature of the claims of some class members based on differences in the dates of purchase do not necessarily defeat a showing of typicality. "In proving their own claims, [Randle and Eresian] will necessarily prove the case of earlier purchasers, thereby fairly and adequately representing all purchasers regardless of when their purchase was made." *Dura–Bilt Corp. v. Chase Manhattan Corp., supra* at 100. Furthermore, if as the case develops, differences in purchase dates significantly affect the nature of the class members' claims, the court may, upon motion of any party or *sua sponte*, divide the class into appropriate subclasses. *See Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). At this time, however, I conclude that the possible differences in claims due to varying purchase dates do not defeat plaintiffs' showing of typicality under Rule 23(a)(3).

■ Defendants also allege that Randle is atypical because she relied upon the advice of Eresian in making her purchases, rather than upon the market. Reliance on the market, under the fraud-on the market theory, however, includes reliance on " 'statements of third parties [such as brokers] that merely reiterated, digested, or reflected the misstated [market] information that forms the basis of the securities fraud claims.' " *Kirby, supra,* at 306 (quoting *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 788 (N.D.Ill.1984)). "Such a rule is necessary if the salutary purposes of the 'fraud on the market' theory are not to be gutted, for it is likely that many investors rely upon information digested by others and not simply on the market." *Id.* Any difference in the source of Randle's information is insufficient to prevent certification of the class. As noted in *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 137, 149 (D.N.J. 1984),

differing types of reliance are present in almost every securities class action. There will always be some individuals who read the financial statements directly, others who read secondary analyses

... and many others who relied on the advice of stockbrokers or friends. If defendants' argument were to prevail that factual differences of this nature were sufficient to defeat class action certification, there could never be a class action of securities purchasers.

In addition, I conclude that Eresian is not atypical due to his sophistication in investing. "Where ... there is an imbalance of information available to investors on an open market, all such investors are harmed whether they are professionals or amateurs. Sophistication plays no part in reliance or causation where nondisclosures have created an imbalance of information." *Kirby, supra* at 308 (citation omitted). *See also Kolin, supra,* (applying similar reasoning in case alleging misrepresentation.) Eresian relied only upon information readily available to other investors and not on knowledge available only to an institutional investor or one who had direct contact with corporate officers. *See Priest v. Zayre, supra,* (distinguishing *Zandman v. Joseph,* 102 F.R.D. 924, 930–32 (N.D.Ind.1984)). Neither Eresian's sophistication, nor Randle's reliance on his advice, therefore, makes them atypical of the class they seek to represent.

### ADEQUACY OF REPRESENTATION

Defendants also contend that Randle and Eresian are inadequate representatives of the class. With respect to defendants' contention that Randle is an inadequate representative due to her limited financial resources, I conclude that plaintiff's representations that her fellow representatives are able to assist her and that counsel have agreed to advance the costs of litigation sufficiently show plaintiff's ability to adequately represent the class.

Defendants have also failed to raise a serious question as to Randle's credibility. Defendants contend that contrary to her sworn testimony, Randle could not have read the 1985 Annual Report before her April 9, 1986 purchases because it had not been published yet. Defendants also state, however, that Spectran's 1985 Annual Report was filed with the SEC on March 28, 1986. In any case, I conclude that this allegation is insufficient to establish Randle's lack of credibility. Defendants also attack the character of Eresian as inadequate for a class representative. In support of this argument, defendants cite four indictments for arson ten or more years ago, a misdemeanor conviction for disturbing the peace, and the fact that Eresian testified at deposition that he did not file tax returns in 1985 and 1986.

The court concludes that the evidence, considered separately or taken as a whole, does not demonstrate that Eresian would be an inadequate class representative. As to the criminal indictments and one conviction, such distant and inconclusive evidence is insufficient to call into question the adequacy of a class representative. Even "a felony criminal record is not per se disqualifying as a class representative." *Haywood v. Barnes,* 109 F.R.D. 568, 579 (E.D. N.C.1986) "Incarcerated felons have long been certified as class plaintiffs in numerous cases." *Id.* (citing cases). "Plaintiffs' adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as allegedly and tenuously evidenced by their prior criminal record." *Id.*

The only conceivably relevant allegation, therefore, is that Eresian failed to file tax returns in the years 1985 and 1986. This evidence, while serious, in its unexplained form, is not so conclusive as to Eresian's honesty or his capacity for truthfulness in general or with respect to this litigation as to convince this court that he cannot adequately represent the class. This is not a case where a proposed representative's credibility is called into question by his conduct in this or related litigation or situations. *Cf., e.g., Green v. Carlson,* 653 F.2d 1022 (5th Cir.1981), *cert. denied,* 454 U.S. 944, 102 S.Ct. 484, 70 L.Ed.2d 254 (1981) (affirming refusal to grant class action where proposed representative had engaged in a pattern of abuse of the judicial system). In addition, the claims in this case are not the type of claims to which evidence of Eresian's character or integrity

would be of great importance. *See Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683 (D.Ga.1983). Eresian's extensive experience with securities and his attention to this litigation support a determination that he is able to fulfill his fiduciary responsibilities of class representative.

## COMMON ISSUES OF LAW AND FACT

 Rule 23(b)(3) requires that plaintiffs also show that common issues of law and fact predominate in this action. In light of the Supreme Court's decision establishing the fraud on the market theory to establish reliance, proof of reliance no longer need be an individual matter. I conclude that the common questions with respect to the existence and materiality of misleading statements or omissions in documents or press releases concerning SpecTran securities, along with the related questions of defendants' liability for such alleged statements or omissions, predominate over any individual questions in this action. Furthermore, in light of plaintiffs' allegations concerning the large number of outstanding Spectran shares during the class period, the relatively small financial stake of class members who may have been injured and the likely geographical dispersion of class members, a class action is superior to other methods of adjudicating this controversy. *See, e.g., Priest v. Zayre, supra; Kirby v. Cullinet, supra, In re Activision Securities Litigation,* 621 F.Supp. 415, 429–30 (D.Cal.1985). For the foregoing reasons, I conclude that plaintiffs' motion for class certification of the Section 10(b) and Rule 10b–5 claims should be granted.

## PENDENT CLAIMS

 Defendants further allege that even if Plaintiffs' federal claims are appropriate for class action, as I have concluded, their state law claims cannot be certified because the law of many forums will apply to these claims, so that common issues of law and fact will not predominate. I conclude that there is a high likelihood that Massachusetts law will apply to all of the pendent claims and therefore that certifica-tion is appropriate. *See In re Pizza Time Theatre Securities Litigation,* 112 F.R.D. 15, 18 (D.Cal.1986) (court should not conclusively determine choice-of-law question on a motion for class certification).

In *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court held that, in order to comply with the requirements of due process, before a state can apply its law to a class under a choice-of-law analysis, it must have "sufficient contact or aggregation of contacts" to the claims asserted by members of a class. *Id.* In this case, Spectran's principal place of business is in Massachusetts. SpecTran's top management, including the individual officer defendants, maintained their offices in Massachusetts during the class period. Decisions regarding the timing and content of corporate disclosures were made in Massachusetts. Press releases, SEC filings and shareholder reports were prepared in Massachusetts. The underwriter defendants, Advest, Inc. and Allen & Co., conduct substantial business in Massachusetts, including the business which gives rise to this litigation. The October 1985 offering of securities emanated from Massachusetts and most of the activities of the defendants in connection with the public offering took place in Massachusetts. These significant contacts on all claims establish a sufficient nexus between Massachusetts and the common law claims to justify application of Massachusetts law to the pendent claims. *See Gruber v. Price Waterhouse,* 117 F.R.D. 75 (E.D.Pa.1987); *In re ORFA Securities Litigation,* 654 F.Supp. 1449 (D.N.J.1987).

In applying the law of Massachusetts to these claims, this court must also apply the Massachusetts choice of law rules. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Massachusetts courts have begun to apply a "more functional" approach to choice of law issues in lieu of the traditional doctrine of *lex loci delicti. See, e.g., Choate, Hall & Stewart v. S.C.A. Services, Inc.,* 378 Mass. 535, 392 N.E.2d 1045 (1979); *Pevoski v. Pevoski,* 371 Mass. 358, 358 N.E.2d 416 (1976). The Supreme Judicial

Court has indicated that it will look to the law of the jurisdiction having the strongest interest in resolving the particular issue presented. *Pevoski, supra. See also Engine Specialties, Inc. v. Bombardier, Ltd.,* 605 F.2d 1, 19 (1st Cir.1979), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980).

Although courts have split on the issues presented by certification of pendent state claims, the recent trend is towards certification. *See, e.g., Baum v. Centronics Data Computers,* 1986–87 Fed.Sec.L.Rep. (CCH) ¶ 92,797, 1986 WL 15784 (D.N.H. 1986); *Gruber v. Price Waterhouse, supra; In re ORFA Securities Litigation, supra; In re Pizza Time Theatre, supra.* This court is persuaded that certification is appropriate in this case. Even accepting defendants' argument that the laws of other states on fraud and misrepresentation are significantly different and that each jurisdiction has an interest in seeing its own law applied, the interest of each jurisdiction in having the injuries of its citizens litigated and compensated outweigh any interest in applying its own law. *See Pizza Time, supra.* I therefore conclude that Massachusetts law is likely to govern all of the pendent state claims and thus that common issues of law and fact will predominate on plaintiffs' pendent state law claims. Therefore, plaintiffs' claims will be certified as a class at this time. Of course, should issues of conflicting state laws or other problems of management arise as this action progresses, this court will consider the continued viability of the class at that time.

ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendants' Motion to Dismiss Counts III and IV of plaintiff Hellenic Investors is allowed.

(2) Plaintiffs' motion for certification of the class is granted.

(3) A conference is scheduled for 3:30 p.m. October 25, 1988 to consider whether Charles Kiritsy may represent the class of Spectran stock purchasers and to deter-

mine the exact formulation of the class to be certified.