DENNIS FUSCO[1] vs. ROCKY MOUNTAIN I INVESTMENTS
LIMITED PARTNERSHIP & others.[2]

No. 96-P-287.

Suffolk. January 30, 1997. - April 4, 1997.

Present: ARMSTRONG, GILLERMAN, & IRELAND, JJ.

*Partnership,* Limited partnership, General partner. *Revised Uniform Limited Partnership Act. Res Judicata. Waiver.*

Discussion of the Revised Uniform Limited Partnership Act, G. L. c. 109, as bearing on the issue whether a limited partnership is an entity that may be sued in its own name. [444-447]

Discussion of the distinctions between a limited partnership and a general partnership with respect to the rule of pleading. [447-448]

The plaintiff in a civil action properly brought suit against certain limited partnerships and was not required to bring the action against the general partners of the limited partnerships, and the judge erred in dismissing the action for failure to name the general partners as defendants. [448]

A civil action against certain limited partnerships was not precluded by an adjudication of a claim brought against the general partner of the limited partnerships, where the claims were based on different grounds of liability, where the assets sought to be reached were different, and where the respective defendants were not identical, nor were they parties in privity. [448-451]

[1]As representative of a class composed of all partners in the general partnership doing business as BDO Seidman.

[2]Rocky Mountain II Investments Limited Partnership; Essex Carolina Properties Limited Partnership; Oak Park Investments Limited Partnership; March Tamara Properties Limited Partnership; Eastern Kentucky Investments Limited Partnership; North Oklahoma Investments Limited Partnership; March Carolina Properties Limited Partnership; Tara Valley Investments Limited Partnership; Summit Ridge Investments Limited Partnership; Tanglewood Investments Limited Partnership; March/Maryland II Investments Limited Partnership; March/Maryland I Investments Limited Partnership; Country Place Investments Limited Partnership; Red River Investments Limited Partnership; Terrace Investments Limited Partnership; March Carolina Limited Partnership; March Heritage I Limited Partnership; Par Four Investors, A Kansas Limited Partnership; KSN Investments Limited Partnership; Jefferson Park Partners I Limited Partnership; Liberty Court Associates Limited Partnership.

There was no merit to defendants' claims in a civil action that the plaintiffs had waived their right to proceed against the defendants, where nothing in the record supported such an assertion. [451]

CIVIL ACTION commenced in the Superior Court Department on January 21, 1994.

The case was heard by *Herman J. Smith, Jr.,* J., on motions for summary judgment, and a motion for reconsideration was heard by him.

*David B. Chaffin* for the plaintiff.

*Peter M. Coppinger* for the defendants.

GILLERMAN, J. After the plaintiffs, a general partnership of independent public accountants (Seidman), were not paid in full for services rendered to thirty-four limited partnerships, they brought suit in January, 1994, against twenty-two of the limited partnerships (the defendants) claiming breach of contract (count I) and unjust enrichment, or quantum meruit (count II).[3] Unpaid charges totaled $174,196 as of the date of suit.

At the time the services were rendered, the general partner of each of the limited partnerships was The March Company, Inc. (March Company), a Massachusetts corporation.[4] On August 9, 1991, a judge of the Superior Court appointed a receiver of March Company,[5] and the status of March Company as general partner of the defendants terminated by

---

[3]It appears that the remaining limited partnerships were insolvent. Four of these were originally named in the complaint (SCNB Limited Partnership, March Heritage II Limited Partnership, Pleasant Valley Inn Limited Partnership, and Bavarian Village Limited Partnership) but were later dismissed.

[4]Seidman's claims are based on engagement letters addressed to and approved by March Company as general partner for each of the limited partnerships. The letters are agreements by Seidman to perform accounting services for each of the thirty-four limited partnerships of which March Company was the general partner, including the preparation of Federal and State tax returns, for the fiscal years ending December 31, 1989, 1990, and 1991.

[5]According to the receiver's final report, dated February 11, 1993, the receivership proceedings were complex. March Company was the general partner in 56 investment partnerships, involving 257 operating partnerships. It was the general partner or cogeneral partner in 56 operating partnerships. It held limited partnership interest in 153 partnerships in which it had no general partnership interest. Its corporate subsidiary

operation of law. See G. L. c. 109, § 23(4)(vi). New general partners, who had purchased the interests of March Company in the defendant limited partnerships, were subsequently appointed successor general partners. See note 16, *infra,* and related text. On April 14, 1992, almost two years before this action was commenced, Seidman filed a proof of claim in the receivership proceedings for $307,523.00,[6] that being the full amount of its unpaid claim for services rendered to the thirty-four limited partnerships, including its claim against the defendants. See G. L. c. 109, § 24 (a general partner is liable for the debts of the limited partnership).

In the Superior Court proceedings, the defendants filed a motion for summary judgment, and Seidman filed a cross motion for summary judgment. The judge allowed the defendants' motion on the ground that the complaint failed to name March Company or the current general partners as defendants, and he denied Seidman's cross motion. Seidman moved for reconsideration and for leave to amend its complaint by adding the current general partners. The motion for reconsideration was denied, and the motion to amend was denied because "the amendment would be futile." The judge reasoned that March Company could not be named a defendant because the order of the Superior Court confirming the receiver's final report barred such a suit, and the successor general partners could not be named as defendants because the Superior Court order authorizing the sale of March Company's interests in the limited partnerships provided that

---

provided investor services and financial information to 340 partnerships which had over 7,000 limited partner investors. Limited partner capital contribution in excess of 38.6 million dollars were to be collected over the succeeding four years. Notes payable by it to others totaled 2.3 million dollars. Trade creditors had claims in excess of 2.5 million dollars. Its contingent liabilities, discussed *infra,* totaled 3.7 million dollars. Advances to it from partnership accounts totaled 6.1 million dollars.

[6]Seidman's decision to file a proof of claim appears to have been the result of a meeting among the receiver, his accountant, and a representative of Seidman. According to the affidavit of the accountant who was present at the meeting, the receiver and the accountant told Seidman's representative "that [Seidman] should continue to look to [March Company] for payment" of the obligations of the eighteen limited partnerships. Seidman eventually expanded its claim to include the remaining limited partnerships involved in this action.

those interests would be "free and clear of all claims."[7] As discussed more fully, *infra*, the effect of the motion judge's rulings was to put the assets of the defendant limited partnerships beyond the reach of Seidman thereby confining Seidman's recovery for services rendered to available distributions in the receivership proceedings. Final judgment was entered December 1, 1995, and Seidman appealed.

In support of the judge's decision the defendants argue that (1) Massachusetts law requires the defendant in a suit against a limited partnership be the general partner, and Seidman was unable, as matter of law, to conform to that requirement, and (2) the doctrines of res judicata and waiver bar Seidman's claims in any event.

1. *The defendant limited partnerships are the proper parties to this action.* Chapter 202 of the Acts of 1982 amended G. L. c. 109 by striking the provisions of c. 109 and adopting the Revised Uniform Limited Partnerships Act (Act) in its place.[8] The principal question for our decision is whether the Act authorizes suit against limited partnerships in the name of the partnerships.

While obiter dicta in several Massachusetts decisions have suggested the need to name at least all the general partners when an action is brought against a limited partnership,[9] no decision discussed the issue in the context of the

---

[7]In fact, the "claims" referred to in the order were those of the limited partnerships against March Company by reason of advances made by the limited partnerships to March Company.

[8]The Revised Uniform Limited Partnership Act was approved by the National Conference of Commissioners on Uniform State Laws in 1976. It superseded the original Uniform Limited Partnership Act approved by the National Conference in 1916. See Uniform Laws Annotated, Revised Uniform Limited Partnership Act (1976) with 1985 Amendments, at 2 (1995).

[9]The most commonly cited opinion is *Gorovitz* v. *Planning Bd. of Nantucket,* 394 Mass. 246, 249 (1985). That case, however, "pose[d] the question whether a general partner of a limited partnership, who serves as the partnership's legal counsel and who is a named plaintiff in an action, may represent the partnership in the action if he intends to testify at trial." *Id.* at 246. In response to the defendant's argument that the plaintiff was not in fact acting pro se, the court responded by discussing the importance of the duties of a general partner in a limited partnership. This latter point was held to be decisive — not the rule of pleading that "all partners must be parties to a suit involving partnership rights." *Id.* at 249. As to this lat-

provisions of c. 109, and no decision has held that the failure to do so is sufficient reason for dismissal of the suit.

As a preliminary matter, in construing c. 109 we are obliged "to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." See G. L. c. 109, § 60, as inserted by St. 1982, c. 202, § 1. The rub is that few of the states which have enacted the Revised Uniform Limited Partnership Act have considered the question, and those that have reach varying results.

Rhode Island has adopted the Revised Uniform Limited Partnership Act, and in *Billings & Co., Inc.* v. *Pine St. Realty Assoc. Ltd. Partnership*, 754 F. Supp. 10, 12-13 (D.R.I. 1990) the court held, relying principally on the statutory provision regarding service of process on a designated agent — a provision which is identical to the service of process provision in Massachusetts, see c. 109, § 4(2),[10] and to § 104 in the Revised Uniform Limited Partnership Act — that a limited partnership may be sued in its own name as a legal entity

ter point, the court cited two cases involving *general partnerships* subject to G. L. c. 108A, *Shapira* v. *Budish*, 275 Mass. 120, 126 [1931], and *Gordon* v. *Medford,*, 331 Mass. 119, 124 (1954). *Shapira* cites to *Fowle* v. *Torrey*, 131 Mass. 289 (1881), a case involving a bill in equity brought against one of two general partners. In *Fowle* the court held, apparently for the first time, that the bill could not be maintained without making the second partner a party defendant. *Id.* at 291. In *Milton Commons Assoc.* v. *Board of Appeals of Milton*, 14 Mass. App. Ct. 111, 111 n.1 (1982), the court observed that the plaintiff is a limited partnership and the action should have been brought in the name of its general partners, but that nothing turned on this "procedural irregularity." The court cites to *Roberts-Haverhill Assocs.* v. *City Council of Haverhill*, 2 Mass. App. Ct. 715, 721 (1974), a case involving a general partnership, and to a rescript opinion of the Appeals Court which did involve a limited partnership, *First Hartford Realty Corp.* v. *Corporate Properties Investors*, 12 Mass. App. Ct. 911 (1981), but *First Hartford* cites to *Gordon, supra.* A judge of the United States District Court for the District of Massachusetts, notes the uncertain status of the issue in *Guest Quarters Hotel* v. *Kaufman*, U.S. Dist. Ct., No. 90-10671-Z (D. Mass. July 6, 1990), but nevertheless followed the dictum described above. On the other hand, the United States Bankruptcy Court for the District of Massachusetts, in *Seybolt* v. *Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 127 (Bankr. D. Mass. 1984) (citing a decision of the Bankruptcy Court of the Southern District of New York) stated that it is "well-established" that limited partnerships and general partners "are separate legal entities."

[10]Section 4(2), as inserted by St. 1982, c. 203, § 1, provides that each limited partnership shall continuously maintain in the Commonwealth "an agent for service of process *on the limited partnership*, which agent must be an individual resident of the Commonwealth, a domestic corporation, or a

notwithstanding the contrary common law rule regarding general partnerships. See also *Leneen* v. *Ruttgers Ocean Beach Lodge,* 662 F. Supp. 240, 241 (S.D. Fla. 1987) (the Florida statute, at that time, explicitly "except[ed] limited partnerships from the general rule that partnerships cannot be named as parties").[11] Contrast *N.E. & R. Partnership* v. *Stone,* 745 S.W.2d 266, 267 (Mo. App. 1988) (Missouri reached the opposite result under the service provision of its limited partnership statute even though it also required an agent for service of process).

Thus, neither prior decisions in this jurisdiction nor decisions elsewhere satisfactorily answer the question at hand. We turn, then, to the provisions of c. 109.[12] Section 4(2), quoted in note 10, *supra,* if not an express provision authorizing suit directly against a limited partnership, certainly points in that direction. In their treatise, Bromberg and Ribstein on Partnership (1988), the authors state at § 15.12(c) that suit against a limited partnership may be inferred from the service of process provision which appears in the Revised Uniform Limited Partnership Act § 104. The point is reinforced by § 8 of c. 109 which provides that the required certificate of limited partnership which must be filed in the office of the Secretary of State, "shall set forth . . . (3) the address of the office and the name and address of the agent for service of process required to be maintained by section four." Sections 4(2) and 8, when read together, may be taken to mean that each limited partnership must give public notice that suit may be commenced against it merely by serving the agent for service of process whose name appears in the filed certificate of limited partnership.

The conclusion that a limited partnership is an entity which may be sued in its own name has additional support from other provisions of c. 109, particularly §§ 56-59 which provide for derivative actions by a limited partner. Section

foreign corporation authorized to do business in the commonwealth" (emphasis added).

[11]Florida's statute now conforms with the Revised Uniform Limited Partnership Act.

[12]Section 62 of c. 109, as inserted by St. 1982, c. 202, § 1, provides that "[i]n any case not provided for in this chapter, the provisions of the Uniform Partnership Act as provided in chapter one hundred and eight A shall control." For the reasons stated in the text, we conclude that the provisions of c. 109 do control the issue presented.

56, as inserted by St. 1982, c. 202, § 1, provides that "[a] limited partner may bring an action *in the right of a limited partnership* to recover a judgment in its favor" (emphasis added). This provision is indistinguishable from the parallel right of a stockholder to bring a derivative action; c. 156B, § 46, refers to derivative actions as "any suit or proceeding *in the right of the corporation*"[13] (emphasis added). Section 56 of c. 109, like § 46 of c. 156B in the case of corporations, acknowledges that a limited partnership is an entity in whose "right," and for whose benefit an action may be maintained. Further, in any derivative action the entity in whose right the action is brought appears as the defendant. See, e.g., *Turner* v. *United Mineral Lands Corp.*, 308 Mass. 531, 532, 538-539 (1941). See also c. 109, § 16A(*b*), as inserted by St. 1995, c. 281, § 14, which recognizes limited partnerships as identifiable legal entities by expressly authorizing the consolidation or merger of limited partnerships.

In addition to these statutory provisions, it should be recognized that there are fundamental differences between a limited partnership and a general partnership so that the rule of pleading regarding a general partnership, upon which the defendants rely, has no applicability to a suit against a limited partnership. A general partnership is merely "an association of two or more persons to carry on as co-owners a business for profit." G. L. c. 108A, § 6. It is a private consensual arrangement with no notice of that arrangement to the world as in the case of limited partnerships and corporations. Under the provisions of G. L. c. 108A, § 25, "[a] partner is co-owner with his partners of specific partnership property holding as a tenant in partnership." This is a codification of the common law rule that a general partner does not have the separate right to "a specific partnership asset." *Shapira* v. *Budish*, 275 Mass. 120, 126 (1931). Thus to reach all the assets of a business being conducted as a general partnership, under the common law and under c. 108A, it is necessary to sue all the partners. See *Fowle* v. *Torre*, 131 Mass. 289, 291 (1881).

A limited partnership is markedly different. All the general partners, as we have noted, are personally liable for the debts

---

[13]We note that rule 23.1 of the Massachusetts Rules of Civil Procedure does not refer to derivative actions in the case of limited partnerships. 365 Mass. 768 (1974).

of the limited partnership, but all the general partners do not own all the proprietary interests in the limited partnership. Typically, a majority interest is owned by the limited partners.[14] The underpinning for the common law rule of pleading — that all the general partners in a general partnership together own all the assets as "tenants in partnership" — is absent in the case of a limited partnership, and a requirement that suit must be brought against the general partners, as the defendants argue, in order to reach the assets of the limited partnership would lack the rationale that underlies the rule of pleading regarding general partnerships.[15, 16] The system contemplated by c. 109 is coherent and adequate: sue the limited partnership and serve the designated agent for service of process whose name and address appears in the certificate of limited partnership on file in the office of the Secretary of State.

For these reasons we conclude that Seidman properly brought suit against the defendants even though it did not name any general partner.

2. *Seidman's claims are not barred by the doctrine of claim preclusion nor were its claims waived.* The defendants argue that Seidman's claims against the defendants are barred by reason of the Superior Court's adjudication of their claim against March Company because there is an identity of parties and an identity of claims.[17] See *Bagley* v. *Moxley,* 407 Mass. 633, 636 (1990) (claim preclusion prohibits the mainte-

---

[14]For a discussion of the history and recent use of the limited partnership as an investment vehicle, and its similarity to a corporation, see *Partnership Equities, Inc.* v. *Marten,* 15 Mass. App. Ct. 42, 44-49 (1982).

[15]Moreover, where, as here, the general partner is insolvent or substantially so, so that its right of reimbursement is of no practical value, the only effective recourse of a creditor of the limited partnership is to commence an action against the limited partnership in order to reach its assets. The same is true when, as here, successor general partners assume their position on a date following the events giving rise to the indebtedness of the partnership and they are immune from liability for such claims. See c. 108A, § 17, available in a limited partnership case by virtue of c. 109, §§ 24 & 62.

[16]To put the matter somewhat differently, a supposed rule of pleading in cases involving general partnerships was in fact a rule based on substantive law, and the application of that rule to the different substantive law context of limited partnerships was inappropriate.

[17]The defendants also argue that under the terms of the receiver's final report, the right to receive any distribution in the receivership proceedings

nance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies). We disagree.

(*a*) Seidman's claim against March Company is different from its claim against the defendants. The claim asserted by Seidman in the receivership proceedings was a claim against March Company based on its personal liability for debts of the limited partnerships,[18] while Seidman seeks to enforce a direct claim against the defendants for services rendered in accordance with a written agreement. More fundamental is the fact that the receiver, in marshaling the assets of March Company, sold only the interests of March Company, general and limited, *in* the limited partnerships.[19] The *assets* of the limited partnerships were never at risk and never became available for the satisfaction of the claims of Seidman (or any other creditor of the limited partnerships) in the receivership proceedings.[20] The result was that Seidman's claim against March Company was limited to reaching its share of the as-

is in exchange for the complete cancellation of the creditors' claims against March Company. Since, as we explain in the text, Seidman's claim against March Company is different from its claim against the defendant limited partnerships, the argument is unpersuasive. Contrast *MacAllister* v. *Hosley*, 352 Mass. 766 (1967), discussed in the text.

[18]In the receiver's final report, Seidman's claim is classified as a "contingent claim," that is, "where the obligation of [March Company] arose in an indirect manner, such as . . . a result of being a general partner of a limited partnership." To the same effect is the affidavit of Mary Ferrara filed in support of the defendants' motion. Ferrara acknowledges that March Company is "contingently liable for debts unable to be satisfied with partnership funds."

[19]A precise description of the interests sold does not appear in the record before us, and the briefs provide no assistance. The final report of the receiver refers only the "marshalling all the assets of [March Company which] involved selling partnership interests, general and limited, held by [March Company] or a subsidiary of [March Company] on August 5, 1991." We assume that the interests referred to were participating equity interests owned by March Company as general and limited partner in the limited partnerships. See G. L. c. 109, § 25, which provides that a general partner may make contributions to the partnership and share in the profits and losses of the limited partnership as a general partner, and a general partner may also make contributions to the limited partnership and share in profits and losses as a limited partner.

[20]The limited partnership agreements each provided that the limited partnership shall indemnify the general partner for all expenses incurred by it on behalf of, or for the benefit of, the limited partnership. It does not appear that the receiver attempted to resort to this provision in order to reach

sets of March Company, while its claim against the defendants is an effort to reach, for the first time, the assets of the defendants.

(*b*) March Company and the defendants were not identical parties in the receivership proceedings, nor were they parties in privity.[21] In the receivership proceedings, only the assets of March Company were at risk; neither March Company nor the receiver was protecting, or had any interest in, the assets of the defendants; and the assets of the defendants were not at risk in the receivership proceedings. Contrast *MacAllister* v. *Holsey*, 352 Mass. 766, 766 (1967) (in a general partnership governed by c. 108A, a final judgment in a suit brought against two individuals as copartners barred a subsequent ac-

---

assets of the limited partnerships in satisfaction of the claims of the creditors of March Company whose claim arose out of the business of the limited partnerships. As noted in the text, the receiver only marshaled the interests, general and special, of March Company in the limited partnerships.

[21]March Company's position is analogous to that of an indorser of a note. See G. L. c. 106, § 3-414. Its liability as general partner is to pay the unpaid debts of the limited partnership. See c. 109, § 24. As in the case of indorsers, see *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114, 120 (1933), the liability of the March Company for the debts of the defendants under § 24 is secondary to the primary liability of the defendants for the partnerships debts. *Ibid.* See also note 15, *supra*. The liability of the party primarily liable and the liability of the party secondarily liable is several, not joint. *Ibid.* See 6 Anderson, Uniform Commercial Code, § 3-414:7 (3d ed. 1993) ("The liability of an individual indorser is several rather than joint"). Absent the receivership proceedings, Seidman could have brought a single action joining the defendants and the general partners in one suit, or it could have brought successive suits, or it could have brought suit against March Company in its capacity as general partner. See *Rossi Bros. Inc.*, *supra* at 120; *USTrust* v. *Henley-Warren Mgmt. Inc.*, 40 Mass. App. Ct. 337, 339 n.8 (1996). But it could recover the amount of its claim only once. No different result should obtain in this case where, as noted above, the receiver only marshaled the interests of March Company in the limited partnerships. In the event Seidman recovers from the defendants (as the defendants contend that March Company has already done), the amount it may collect will be reduced by the amount, it has collected in the receivership proceedings. See G. L. c. 109, § 24, which describes the full measure of the individual liability of the general partner for debts of the limited partnership by reference to G. L. c. 108A, § 15; it does not incorporate the principal of joint liability of "all partners" in a general partnership for partnership debts as set forth in G. L. c. 108A, § 15.

tion against the same two individuals "as individuals and not as copartners").

There is no merit to the defendants' final argument that by filing a proof of claim in the receivership proceedings of March Company, Seidman waived its claim to reach the assets of the defendant limited partnerships. There is nothing whatever in the record before us to support the assertion that Seidman intentionally surrendered its right to proceed against the defendants in order to reach their assets — an opportunity not available in the receivership proceedings. See *Rose* v. *Regan*, 344 Mass. 223, 229 (1962).

Judgment for the defendants is reversed. This case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*